On behalf of the appellant, and may it please the Court, Your Honours, before I initially start I would like to reserve two minutes for rebuttal, and to get started, since the case was extensively briefed, I will just try to put it in context and just highlight a couple of issues and respond to your questions if you have some. But one initial thought that came to me when I looked at that case was a very wise person, my late mother always told me and quoted a poet from her ancient land, and he said, words are just sound and smoke. And I would like you to look at the facts, especially the facts here in particular would have it been necessary for the trial court to employ the fact finder to two particular questions. And the first question that arises from the case is, did the police officers who arrest Mr. Morrison, did they, when they walked into the apartment, knew who owned the apartment, who had ownership interests? And on the second side, what were the intentions of the police officers when they entered the premises? And here the Fourth Amendment or the fallacy of the trial court is obvious, because the trial court evaluated the entire happening of the arrest on the basis of a warrantless arrest based on Lopez. So that means the Fourth Amendment did not apply. The entire inquiry to the ownership would have been necessary to determine the case. So sorry, can I just interrupt? So I thought your theory was, like, even if the mother owned this apartment, the son was living there too. As a co-tenant, he has the ability to object and to cut off a consent to entry. And he did. And so the officers had to leave when he said leave, because he's a co-tenant. And they didn't. And so the arrest was invalid. Is that your theory? Yes. This is one of the theories. But in particular, what you just mentioned, the officer should have inquired, and that's what they did. Did they have the information? Who had ownership interest in the apartment? But even if, even if, I don't know why that matters, because he was living there anyway. Yeah. I mean, you are exactly on point. Maybe I'm just moving out too much to the side. But exactly. The moment that Mr. Morrison was in his bedroom and the officers opened it, it was, I think, a question if the door was open. But actually, it doesn't matter. He said he objects to it. And that was the moment the officer should have left, get a warrant because no circumstances, no emergency was present at the moment. And they were already aware. Is the moment when we should consider whether they should have gotten a warrant when the mother's at the police station talking to them about why they should go and arrest the son, not even when they're at the door of the bedroom? That would have been another point because, I mean, the incident that occurred on Saturday, on Sunday, the mother went without any harm. She never articulated that to the police station. The interview was conducted. The police officer followed her, went to the apartment, and they got consent to enter the apartment by the mother. But the consent that the mother rendered at this moment, I mean, it's even questionable for us. The consent was to interview the son. And even if she gave consent for the apartment as a co-inhabitant for his bedroom, he had exclusive control and it would have been necessary and the police officer should have known. So I think you have an argument that an adult son, that there shouldn't be a presumption that a parent can consent to an entry into a bedroom of an adult child. We might agree with you about that, but is there any case that says that definitively such that it was clearly established? We didn't find a case on point, but the summary of all cases, whether it's been, I mean, what is out there, even Lopez applied in the negative, but Peyton, all these cases together, even the opposing side cited that there is nothing on point. But due to the history of 200 years of the fourth amendment and how it was applied, like with co-inhabitants, even would come to the conclusion. And we think, good that you mentioned it, and it could basically everything my outline that I have here, I can skip it. But the key is actually really what rights did Mr. Morrison have in the apartment was what his property rights. As an adult son, almost 30 years old or 30 years old, I think you cannot apply the standard as a parent living with minor children, because in that moment, parents have a duty to take care of their children. But the bedroom by itself was a space that is actually, and all the precedents show it, that that space was clearly protected by the fourth amendment. And that should have, I mean, applied. And then, can I ask you, what about, so Georgia against Randolph, which is where we get the whole concept that the co-tenant can object, says that maybe it's different if there's a hierarchy, like a parent and child, and maybe they meant minor child. Maybe it includes adult children. How is it clear? Yeah, I mean, I read the case too, and good that you mentioned it, the hierarchy. And for me, I mean, just even if it's not personal, as a single father of a 17 and a 27-year-old living in my house, I ask exactly that question. What are my rights? It's my house, they live there. For my son, for example, and I think your Honour should consider this, for a minor, I have a duty. My daughter, as an adult living in the house, I have no, that is her confined space. And I think the case law in particular goes there because it's, there is no question about it. And bringing it back to this case, in this case, your Honour, it's a clear violation of the Fourth Amendment. Just the – Well, let me ask you a, let me, let me ask you to move on for one step. Yeah. So let's suppose that they should have gotten a warrant, and they didn't, but they had a probable cause. So they should have gone back and gotten a warrant, or they should have gotten it at the first, first place. Where does that get you? Oh, I mean, first of all – If there had been a search, you're not objecting to a search. Does, what, what, what, what is it that you're after in terms of remedy? This is a, yeah, a 1980, the 883 case, the violation of, of essential rights by the, by the government. I think the, the purpose of the statute comes in here. Should the, is the statute protecting citizen of conduct of – Well, I, I, I'm, that's not what I'm asking you. Sorry. I'm, do, what are you, do you want to, you want damages for what? For the prosecution? Then for the violation of the right itself, the arrest, the deprivation of his initial freedom. Is, at that time? At that, at that time. That's all? Yeah. So would it be nominal damages? Yeah. Wait. Because probably if, it's like you play it backwards. If they had gotten a warrant, they would have been able to arrest him. So it's really the, like, intrusion without a warrant. I mean, I think you have an argument it's a constitutional violation. So you, it's the argument you should get nominal damages? If nominal damages are sufficient, there, I mean, a court should look at that, what damages apply, but the emotional distress suffered by, by that, the implication of government power employed upon him in his private space. And I mean, if available, even, yeah, punitive damages to avoid this, training of police officers, all these, these things come together or, I mean, that all reflects upon the, the act of the officer, especially since it happened in L.A. County, a big county, you know, where officers do that every day. And, I mean, in... Was that asked to the district court? That is the, the, the question to, to, to be, to be determined. But in the bigger context, this case... But it looks like I just found the end of your complaint. I mean, it does seem you, you asked for compensatory damages, special damages, punitive damages. I'm not sure I see nominal, but I don't know if nominal get implied. I don't recall nominal, but... That includes damages for the... Yeah. I guess nominal would be compensatory on your theory, probably. Yes. Yeah. So not only the recognition of the violation that, that, that occurred. I mean, that, that, that what we are... And in George v. City of Long Beach, our court held that someone in this situation who was Right? Yeah. Yeah. But even for nominal damages, you need to overcome qualified immunity, right? Right. Yeah. Okay. So just to, to come back, especially this... So what is your, is you, what is your best case for the idea that once he objected, the, it's clearly established that once he objected, they had to leave and not arrest him. Yes. So the, I mean, to bring it all together, the moment he objected, that should have happened. And that is the moment, I mean, that the injury actually occurred to, to, to the appellant because... So I understand you, you have that argument and we might agree with you, but you can't get past qualified immunity unless there's a case that says once he objected, they had to leave. Right. Especially, I mean, the qualified immunity, with the two-pronged test in Pearson, I think it was, it is a constitutionally well-established right. And I think we established that with the, with the Fourth Amendment, that it applies to the, I mean, there, there's nothing to say about it to the residents of a person that was well-established, the police officers were aware, and they violated that right just by entering his room, tearing, I mean, like, besides the case that he was injured, thrown to the floor, handcuffed on his back, and the emotional damages that happened, I think qualified immunity does not apply due to the case law, because all these two prongs are specially and exactly met in this case. The right to be arrested with a warrant was violated, and that actually happened. I mean... Yeah, but if the mother, the mother could get around the warrant by letting them in, so I think it stops, maybe, when he says, get out, then he's a co-tenant objecting. But so where, do you have a case that's a child of a parent who is allowed to say, I'm a co-tenant to get out, or what's your best case? We have no case exactly on point, but we see the vast majority of the cases that are Fourth Amendment cases in arrest warrantless in a residential area would bring it together. But coming back to the consent, there is one point we raised, too, at the trial court and at the briefing, and the key is that the mother's consent was confined to entering the apartment, the common spaces, maybe, to interview. So the scope of the officer even extended the consent the mother gave, because clearly, the trial record shows that she gave consent to interview. She was not in fear that morning. She guided the officers there, went, like, in the living room, and then the officer went for the bedroom for Mr. Morrison. So besides that argument that he, that Mr. Morrison did not agree and did not consent to the officer... I'm not sure if it matters whether she let them in to interview or let them in to arrest. The issue is she let them in, and so then I think you have an argument that she doesn't have authority to let them into his bedroom. Yes. But I don't know what your case is for that. Yeah. I mean, that's why, I mean, we base our argument on the summary of all the cases together and the meaning of, I mean, of the Fourth Amendment and all the hundreds of years of precedent in this case. Do you want to reserve the time? I'd like to reserve the time. Thank you for your question, and for the question I want to answer with the rebuttal. Thank you. Good morning. Deputy City Attorney Rebecca Young for the defendant officers in this case. This court has honed in, I think, precisely on, I think, the issue that compels the outcome in this case, which is when there is an unsettled state of law, body of law, which is what we're of the party seeking qualified immunity, the officers in this case. And there is simply no case that has held that, per se, when you have an adult child living in a parent's place, and again, if we look at what the officers knew, they knew at the time that it was the mother's place, she'd sought a TRO, she'd asked them to come back. She is acting as if, for all intents and purposes, she has exclusive control of every aspect of the apartment. Does she ever say anything that suggests she doesn't respect his bedroom as his own space? There is no evidence of that, and I'm trying to craft what that would sound like. I mean, I think she, potentially, if she'd read cases from other circuits, she might have said, I clean his room, I go in all the time, I fold his laundry. If she had said that, then they would have had a right to go into his bedroom. But in fact, she didn't. So how did the officers have any reason to plausibly think they could go into an adult child's bedroom when he was actually in there in the bed, I think? Yeah. Well, and I think that it's, at that point, you're going, frankly, by situational awareness. You're going by context clues. You're looking at the person who has sought your help, she, you know, affirmatively went the next day to seek their help in extracting him. They already knew that she had sought the T.E.R.O., just like in any kind of domestic violence situation. They knew that she was injured at that point. They knew that she's elderly at that point. At this point, they're- And so how does any of that relate to whether she has access to his bedroom as a co-tenant? Exactly. So she, I think at that point, they are treating it as any domestic violence victim case. And what they knew was that this was, according to Mrs. Morrison, her apartment. He was living there temporarily. He admitted that he was living there temporarily, that it was a temporary stay. He also, you know, part of the- what led to the argument was over finances, which query whether that means he was even paying rent, unknown. But essentially at that point, she has sought the help of the officers to extract someone from her home. But none of that relates to whether their arrangement as co-tenants leaves her out of his bedroom. Well, but I think that's where we go back to the unsettled state of the case law, which is because in all of the cases where you've got a co-tenant that happens to be the adult child of a parent, that's always going to be- that's going to be the case that they're in a separate bedroom. I don't think those cases focus on parents and adult children sharing the same bedroom. So I didn't say that very well. Also though, we have case law that says a co-tenant overrides a consentor. So why doesn't his lack- when he says leave, why doesn't that override whether even if she could give consent to enter his bedroom? When he says leave, he's a co-tenant, even assuming she folds his laundry, he's a co-tenant saying you have to leave. Why didn't they have to leave at that point? You know, it's interesting because when I was looking at this, when I was writing this brief, it did seem to be these two strains of case law, which I personally couldn't reconcile myself, but there are two strains. Two strains. There is the kind of pure co-tenant scenario. And then the courts have carved out the adult child parental living situation. They do seem to consider that to be different, that there's a different standing. As your Honor noted, there is a- there is- even when you're an adult, there is a hierarchical- Can you point to a case that says that an adult child doesn't count as a co-tenant for the ability to say I'm overriding the consent? I mean, we have general case- lots of cases that say when you have co-tenants and one says come in, if the other one says you can't come in, the one who says you can't come in wins. So, do we have any case that says that's not true when they're related to each other? Well, but I think that's what those cases are presupposing because if they had said- if they had agreed with the parent, come on in, it's fine, frankly, we wouldn't have a case. There wouldn't have been a trial. There wouldn't have been- Yeah, so what case talks about an adult child saying don't come in and the police still get to come in? Can you point to one like that? So I'm looking at- we did collect cases and I think in particular, I'm not actually- two of the cases I'm not going- don't reflect what you just asked because one was an absent adult child and the other was a- was the search of a computer. But if you take a look at- it's kind of a split of authority and the Ninth Circuit has a split that we would like this court to follow as well, which is the United States v. Rith case, which is 164 F. 3rd, 1323. And this is exactly what you just asked. You say Rith like with a W or sorry- No, I'm sorry. Oh, R, right. But that's a Tenth Circuit case. Okay, yeah. Right. And so, but this is the- this is a split of authority, but the Rith split is where the has decided to follow. So in that particular case, that was the- there was a present and objecting adult child. And when faced with- He was 18, right? So, but I guess- Yes. Yes. Exactly so. Exactly so. And so it's- so the California cases that have looked at this split of authority have followed Rith. Well, we don't- well, we could respect California, but you were saying the Ninth Circuit has done it. I'm sorry. I- I- I- California cases, of course, I mean, those are always kind of the cases that in false arrest cases, I'm always kind of looking to those to kind of see where we're- where the state is headed. But you know, I- when I was discussing this case with coworkers the other day, I wondered if we were getting into this, because there does seem to be a- there is an exception carved out for that particular relationship. There is. And I really think what's most important to focus on is what- in 2016, what was the state of the law that these officers were bound by, you know, lock, stock, and barrel? And if there clearly wasn't anything then, I would- So even in Rith, it says there's insufficient factual findings that Rith's parents had joint access to his bedroom to support a conclusion of their authority to consent to a search of his bedroom. Well, but the search- but that was- well, there- well, there was not a search in this case. There was just- there was the hailing. But it's the same point, right? There's no reason to think that the parents had access to the bedroom of a- in that one, it was an 18-year-old. He's older here. Right. But I do think- I do think it's important to note, as this court has, that, you know, the burden is on the plaintiff in this case to find that case that's on- that's on all four corners. Well, let me ask you a different question. If I under- I read the district court to deal with a false arrest claim and say that the probable cause is a defense to a claim of false arrest. Yeah. The district court didn't deal with a- with a warrantless entry claim or a warrantless arrest. And I did not read the complaint to make such a claim. So I am a little perplexed as to why we are arguing about a claim that is going to get at best nominal damages when it doesn't seem to be in the complaint and the district court didn't deal with it. I think- I think it is- I think it is a bit muddled. I agree. And, you know, obviously on appeal- Why is it here? Are you conceding that we- that it's here? Properly here? The false arrest? No. Oh, I'm sorry. The warrantless. Oh. I mean, I think, frankly, if we've addressed it in our brief, we have an obligation to argue it. But I do- I- I- But I- but I do think that, again, in the qualified immunity context, you know, obviously- Well, you might say that it's not clear that he- the right was violated. But if the right was violated, he can get nominal damages, right? So then there's a claim, even if he would have been arrested later anyway. It was clearly established in- at the time of this arrest in 2016. Apart from that, my claim is whether or not it's been waived because he never- he never- I didn't see that he ever raised it in the district court. He's raising it for the first time on appeal. Which- hmm. Okay. I- I- I think maybe Judge Schroeder is asking if he argued this- I was arrested without a warrant in the district court. Is that- Yeah. Yeah. I think he did, though. Yeah. That was the point of his claim, I thought. I mean, I think it was conceded that- I mean, it was obviously he was arrested without a warrant. Yeah. As the exception. Okay. But I mean, it's- I thought it was just claiming damages for the false arrest. I mean, look, if I can argue waiver, I will. But I- No, okay. Yeah. Yeah. I understand your point. Yeah. So can I ask you, though? It seems like you haven't said anything. Your brief talked about this being essentially exigent circumstances that required them to get around a warrant, and I think that's not very plausible, and it seems like you're not arguing it today. Am I- I'm not arguing it today. And so, or should we assume you're not pressing this idea that there was some exigent situation? The district court didn't reach that. Correct. Yes. Yes. Thank you for clearing up that record. Yes. But no, and I think I'm focusing on what the R&R did in this case as well, which is really kind of jumping to the qualified immunity aspect of it. So could I ask you, you may win because there's no clearly established law here, but is there any reason why we shouldn't try to clearly establish this for the next case? that officers shouldn't go into an adult child's bedroom without- where they're objecting either because the mother never had the right in the first place or because they're a co-tenant that can object? I'm smiling because I asked that exact question in my moot court. I was like, they're going to ask me, should we use this case to do that? And when I answered that question to myself, you know, obviously we can't go back in time and make it clearly established for the purposes of this case. But I also think that, um, as the case law has made very clear, it is such a fact specific determination. I don't know that bright line per se rules are ever going to be appropriate in a co-tenant. Is there any reason to not, to not extend the co-tenant? Like we already have a rule that if one tenant says you can come in, if the other tenant says you can't, you have to stop. Is there any reason that an adult child shouldn't have that right as much as anyone else? I think that you would have to untangle and undo a whole body of case law going back decades, which has always treated this relationship as something different than two unrelated individuals who just happened to occupy. So I don't think you've actually pointed to very many cases about adult children and their consent. I mean, we have this rift where it's like a presumption and maybe there's facts or maybe they're not. I mean, we don't have a lot of cases about this. So what is the line of cases we'd have to untangle? I don't think we'd contradict anything, would we? I see what you're saying. Yeah, I see what you're saying. On your reading, we'd be creating a conflict with the Tenth Circuit and RIF, wouldn't we? Yes, I think. I mean, from my reading of it, yes. I do think that that would be setting, you know, and it might be that this is, you know, that the Ninth Circuit does want to establish bright lines because these cases come up. I don't know, but it's, I do find it interesting that courts had carved out that relationship as something different, as something unique. And I can't presume to say why that relationship was deemed that way, but it has been. If we said when the adult child is over 21, we wouldn't conflict with RIF, right? You know, I mean, it's a good point, but, you know, but what if it's an adult? What if it's especially a mature 21-year-old? What if it's a developmentally disabled 21-year-old? You know what? Yeah, I mean, I think the problem is, I mean, at some point the presumption may be flipped, right? Like at some point they're old enough that it's probably the child taking care of the parent. And so it doesn't seem like it makes a lot of sense to keep assuming that the parent trumps the child. And so I don't understand quite why that should always be the presumption. No, it's a great point. And that came up in my moot court as well. And it's, and I, you know, when we were talking it through saying, well, you know, because I'm actually in that position where it's the presumption is flipped, I'm the caretaker. And, but I do think that that kind of highlights the flexibility that you want in this context. You want the breathing room. You want the officers and residents to understand that there's a variety of factors and circumstances that will come into play. And I don't know that- So should we write an opinion that says you need to ask more about the relationship in this household? Another great question. You know, I don't know that, I don't know that an officer, I mean, you have to take a look at what's the officer's priorities at that point in time. And it's to protect this elderly woman who has already been- But that gets back to the exigent circumstances. They could have called and gotten a warrant when they were at the police station. Yeah. I mean, and your difficulty in answering these questions is that, you know, by hypothesis, if we're saying that the law wasn't clearly established, your client doesn't particularly care what the opinion says after that. Well, no, because, no, that's a, but that's a great point because part of our responsibility is to educate, you know, the new recruits and the, you know, and current officers and changes in the law. I mean, this is actually what we do or what we should do. But I do think that, because I did, as just as a former prosecutor, I was thinking through it, you know, but it's, it's not like the FBI-AUSA relationship, the LAPD-DA relationship, there's not a direct pipeline. You don't have a DA that you call and say, you know, you're drafting, the officer would be drafting the warrant himself. He wouldn't be calling a DA, most likely, to help him with that. There's kind of, it's more on the fly. It's less, you know, it's, it's kind of less formal in that respect. Would it make, you know, you know, a prosecutor's and an appellate advocate's life easier if they had simply sought a warrant, which obviously they had probable cause for? Sure. Of course. We wouldn't be here. But, you know, I think to allow the officers the freedom to pursue what I think their main directive at that time was, which was to keep her safe. I think when viewed through that lens, their choices make more sense. It's not an investigation. It's not a proactive case. It's a reactive case. It's an old woman coming up to the desk. If it had been a wife and they get there and the husband says, you have to leave, they would have had to leave, right? Yeah. Yeah. And so you're basically saying there shouldn't be a case that says, I mean, adult children shouldn't be treated similarly to married people. I'm saying that for reasons that maybe I don't even understand myself, but I am saying that that has been deemed a different and more unique relationship. But for example, husband and wife, they are truly co-tenants in every sense of the word, right? I mean, they're community property. They are on equal standing. It is a different relationship in that respect. And I do think that probably came into play with that strain of case law that, you know, that led to kind of a more per se rule about entry into a home over an objecting co-tenant. And I do think that there were reasons for carving out this exception or for treating this particular factual scenario differently. We've taken you over your time. I greatly appreciate it. Thank you so much. Thank you. Thank you, Your Honors, and thank you, opposing counsel. I think the discussions I just witnessed brings it really to the point. I mean, I saw no objections actually from opposing counsel what happened in this specific incident, that it is established that a co-tenant can deny or do not, if the co-tenant is not  on point. But just to come back on the bigger picture, I think if there is no case law on point, and if there's something in the Tenth Circuit that might apply here, like the case that I think, like you said, it might be necessary to bring that to the point nowadays, especially and let me just reflect on one bigger picture. Nowadays in California, due to the cost of living, people live on top of each other. They have different relations. And I think it's very clear, since some families need to stick together to go through these times to establish a clear rule. And I think, like I heard that more inquiry into the specific relationship is necessary and needs to, like the training is an issue. I think that needs to be done and it would be great if it comes from this panel that is local here to establish a rule. If there is a presumption that if the consent is not given, a warrant needs to be obtained and that the Fourth Amendment that is so crucial to our system would be respected. And I think that said it all. Otherwise, everything is in the briefing. And if you don't have no further question, we would submit and like to thank you for the opportunity to be heard. Thank you so much. Thank you both sides for the helpful arguments. This case is submitted and we are adjourned for the day.
judges: SCHROEDER, FRIEDLAND, MILLER